/94

# ORIGINAL
## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Case: 2:06-cv-10734
Assigned To : Steeh, George Caram
Referral Judge: Majzoub, Mona K
Assign. Date : 02/17/2006 1:06PM
Description: HC ANTHONY STOKES
V. HUGH WOLFENBARGER (DA)

Anthony J. Stokes,

    Petitioner,

-vs-

                                       Magistrate:

Hugh Wolfenbarger

    Respondent.

_____/

| | |
|---|---|
| Anthony J. Stokes | Attorney General, State of Michigan |
| Pro Se Petitioner | Mike Cox |
| Inmate No. 365677 | P. O. Box 30212 |
| Macomb Correctional Facility | Lansing, Michigan 48909 |
| 34625 26 Mile Road | |
| New Haven, Michigan 48048 | |

## PETITION UNDER 28 USC§ 2254

## FOR WRIT OF HABEAS CORPUS

## BY A PERSON IN STATE CUSTODY

Petitioner, Anthony J. Stokes, in pro se, respectfully states as follows:

1.) Petitioner is a citizen of the state of Michigan and is currently imprisoned in New Haven, Michigan.

2.) Petitioner is unconstitutionally detained and imprisoned as prisoner number 365677 at the Macomb Correctional Facility, which is a state prison operated by the State of Michigan. Respondant, Hugh Wolfenbarger is the warden of Macomb Correctional Facility.

3.) Petitioner is being held pursuant to MCLA 750.84; MSA 28.279, assault with intent to do great bodily harm less than murder; MCLA 750.83; MSA 28.278, assault with intent to murder; MCLA 750.110 (A)(2); MSA 28.305 (A), first-degree home invasion; MCLA 750.227b, MSA 28.424 (2), felony-firearm, following a jury trial before, visiting judge, Honorable Charles Bokos in the Third Judicial Circuit Court for the County of Wayne, case number 00-010818-01.

4.) Petitioner was sentenced to 5 to 10 years on the assault with intent to do great bodily harm less than murder, 25 to 40 years on the assault with intent to murder, 7½ to 20 years on the first-degree home invasion; and 2 years for the felony firearm. The felony firearm sentence to run consecutive to all other sentences; the home invasion to run consecutively to the assault counts; the assault counts to run concurrent with each other.

5.) The convictions and sentences under which Petitioner is imprisoned is unlawful and void due to multiple violations of Petitioner's right to due process guaranteed by the Six and Fourteenth Amendments to the United States Constitution. These

violations are not mere irregularities, they are major constitutional violations, which cast significant doubt on the fairness of petitioner's trial, more importantly, and they call into question the reliability of Petitioner's conviction.

6.)  Petitioner was represented by attorney George H. Chedraue (P-41732) at trial and sentencing stages of the judgment complained of herein.

7.)  Petitioner did not testify at trial.

8.)  Petitioner has exhausted all state remedies with regard to Federal Constitutional claims raised in this petition by taking the following steps:

(8)(A.) On direct appeal in the Michigan Court of Appeals (docket No. 235905) petitioner's appointed appellate counsel James C. Hall (P-39216) presented the following issues:

(I.)  The appellant was denied the effective assistance of counsel where his trial counsel failed to request that appellant be evaluated for criminal responsibility.

(II.)  The appellant was denied the effective assistance of counsel where trial counsel allowed appellant to be sentenced based upon the incorrect sentencing grid location for the assault with intent to do great bodily harm and home invasion convictions.

(8)(B.) Pro se Petitioner also, through a supplemental brief presented to the Michigan Court of Appeals on direct appeal, the following issue:

(I.)  The appellant was deprived of fair trial upon the prosecution's lack of diligence in attempting to produce a res gestae witness. The appellant has been prejudiced by the prosecutor for only showing part of the res gestae, and part of

2

the whole transaction, which the jury was entitled to have the whole transaction before them.

(8)(C.) On July 29, 2003, the Michigan Court of Appeals (docket no. 235905) issued a three page unpublished opinion affirming petitioner's conviction. (See **Exhibit A)**

(8)(D.) On September 17, 2003, by application for leave to appeal in the Michigan Supreme Court, (docket no. 124643), the petitioner in pro se, presented in the same numbered order, the same three issues presented to the Michigan Court of Appeals.

(8)(E.) On January 27, 2004, the petitioner's pro se application for leave to appeal was denied by order of the Michigan Supreme Court. (See **Exhibit B)**

(8)(F.) On June 1, 2004, the petitioner in pro se filed a Motion For Relief From Judgment, (M.C.R.6.500 et. seq.) in the trial court presenting the following issues:

(I.)     Defendant was deprived of his Sixth and Fourteenth Amendment rights under the State and Federal Constitutions to have the effective assistance of appellate counsel on his one and only appeal as of right.

(A.)    The defendant's appellate counsel ignored significant and obvious issues while pursing weaker claims.

(B.)    The defendant's appellate counsel failed to investigate the facts and circumstance of his case and therefore, failed to properly raise and argue defendant's claims of ineffective assistances of trial counsel on direct appeal.

(II.)    Defendant was deprived of his Sixth and Fourteenth Amendment right under State and Federal Constitutions to have the effective assistance of counsel for his defense.

(A.)    The defendant was deprived of fair trial because of trial counsel's ineffective assistance in failing to have a res gestae witness produced at trial, which deprived the defendant of a substantial defense.

(B.)    Defendant's trial attorney failed to investigate the facts and circumstances of his case and therefore, failed to present a defense at trial.

(III.)    The defendant was deprived of his constitutional right to a fair trial and due process of law by the cumulative effect of errors.

(IV.)    The defendant has established good cause and actual prejudice required by M.C.R. 6.508 (D) and is entitled to relief from judgment.

(8)(G.) On September 22, 2004, the trial court issued it's "Order of the Court" denying petitioner's Motion for Relief From Judgment, and the Motion for an Evidentiary Hearing. (See **Exhibit C**)

(8)(H.) On October 8, 2004, the petitioner is pro se filed an application for leave to appeal in the Michigan Court of Appeals, (docket no. 258406), the petitioner presented in the same numbered order the same four issues presented to the trial court in petitioner's Motion for Relief from Judgment, (M.C.R. 6.500).

4

(8)(I.) On April 7, 2005, the Michigan Court of Appeals issued it's "order" denying petitioner's application for leave to appeal and Motion For an Evidentiary Hearing. (See **Exhibit D**)

(8)(J.) On April 20, 2005, the petitioner, in pro se, filed an application for leave to appeal in the Michigan Supreme Court, (docket no. 124643), appealing the Michigan Court of Appeals decision.  The petitioner presented in the same numbered ordered, the same four issues presented to the Michigan Court of Appeals.

(8)(K) On October 31, 2005, the Michigan Supreme Court issued its "Order of the Court" denying petitioner's application for leave to appeal and petitioner's Motion for an Evidentiary Hearing. (See **Exhibit E**)

9.)    There are no previous petitions or appeals now pending with this case in any court, and this is the petitioner's first and only petition for writ of Habeas Corpus pertaining to this case.

10.)   Petitioner's filing of this petition for writ of Habeas Corpus is timely because his petition was filed within the one year statute of limitations under 28 U.S.C. 2244 (d)(1) and (d)(2); and the federal rules of civil procedure 28 U.S.C. (d)(1) and (d)(2).

11.)   This Court has jurisdiction over this matter pursuant to 28 U.S.C. 2254 and venue is proper pursuant to 28 U.S.C. 2241 (d) because the petitioner was convicted and sentenced within the Eastern District of Michigan, Southern Division.  Petitioner is also incarcerated in the Eastern District of Michigan, Southern Division.

12.)   The following three habeas claims were presented to the state courts on direct appeal:

## HABEAS CLAIM I

13.)   The Petitioner Was Deprived Of His Sixth And Fourteenth Amendment Rights Under The United States Constitution To Have The Effective Assistance of Counsel For His Defense

**Factual Allegation**

14.)   (A.)   The Petitioner Was Denied The Effective Assistance of Counsel Where His Trial Counsel failed To Request That The Petitioner Be Evaluated For Criminal Responsibility.

15.)   The petitioner in this case respectfully submits that his trial counsel's failure to have petitioner evaluated for criminal responsibility was gross ineffective assistance of counsel.

16.)   This is shown by the facts and circumstances surrounding the incident, which led to the charges and ultimately petitioner's conviction and sentence in this case.

17.)   There are several particular facts in this case that are obvious indicators of the petitioner's mental instability before, during and after the incident at issue.

18.)   First, the petitioner was on medication for depression prior to the incident at issue. (See **Exhibit F**)

19.)   Second, the petitioner had been suicidal for at least two weeks leading up to the incident. (See **Exhibit F**, and T. T. Vol. I, pg 105)

20.)   Third, the petitioner shot himself three times during the incident at issue. (See **Exhibits** G, H, 1 and T.T. Vol. 1, pg 60-62 and 81-85)

21.) Fourth, the petitioner was placed on the psychiatric ward of the Wayne County Jail upon his release from the hospital for treatment of his gun shot wounds.

22.) Fifth, the petitioner was prescribed two (2) different depression medications for the duration of his stay in the Wayne County Jail.

23.) The above facts are certainly more than sufficient to have triggered trial counsel's need to have petitioner evaluated for criminal responsibility.

24.) The fact that the petitioner had only two defense options available to him, one of which was an insanity defense, the other was self-defense, and trial counsel failed to assert either, certainly demonstrates that trial counsel's total performance was below the professional skill customary for competent counsel similarly situated.

25.) Not only did trial counsel fail to assert either the insanity defense or self-defense, he failed to assert any defense at all.

26.) The fact that trial counsel failed to assert a defense at trial, due to his failure to have petitioner evaluated for criminal responsibility, certainly deprived petitioner a substantial defense and denied him of his constitutional right to due process of law, beyond all reasonable doubt.

27.) Trial counsel's performance fell below the objective standard of reasonableness where he failed to have petitioner evaluated for criminal responsibility considering the facts and circumstances of this case.

28.) Counsel's deficient performance was prejudicial to petitioner's defense where counsel's inactions deprived petitioner of presenting a defense at trial.

7

29.) Because this claim is a question of law which goes to petitioner's due process rights, which are reviewed "de nove", the presumption of correctness afforded the state courts decision, does not apply to this claim.

**Factual Allegation**

30.) (B.)   THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL ALLOWED PETITIONER TO BE SENTENCED BASED UPON THE INCORRECT SENTENCING GRID LOCATION FOR THE ASSAULT WITH INTENT TO DO GREAT BODILY HARM AND HOME INVASION CONVICTIONS

31.) A defendant in a criminal trial is guaranteed the effective assistance of trial counsel. The effective assistance of counsel is also guaranteed at sentencing.

32.) However, petitioner was denied the effective assistance of counsel where his trial counsel allowed him to be sentenced based upon the incorrect scoring grid location for both the assault with intent to do great bodily harm and home invasion convictions.

33.) As is done in all cases where the Michigan Sentencing guidelines apply a sentence information report (S.I.R.) was prepared for petitioner's sentencing. Petitioner was scored 25 points in the prior record variable (P.R.V.) portion for all offenses, which made him a level "D". Following arguments on the record the scoring of offense variable (O.V.) 12 was reduced from 25 points to 0 points for all offenses, (Sentencing Transcript pg. 11). This scoring in turn lowered the total OV score for the offense in question from 65 to 40 points, which placed petitioner at the "IV" level. The D-IV habitual second grid recommends a minimum

sentence of 19 to 47 months for the assault count and 72 to 150 months for the home invasion. The petitioner's actual sentence on the assault count is outside of the correct range while that for the home invasion is not.

34.) However, not withstanding the above change to the guideline scoring the original grid location of D-V and the original recommendations of 29 to 71 months for the assault and 78 to 162 months for the home invasion were still thought to be correct recommendations.

35.) Given the fact that the latest incarnation of the guidelines has been codified they are now subject to the rules of statutory construction. The primary purpose of statutory construction is to discern and give effect to the Legislature's intent, which is accomplished by first examining the plain language of the statute. Where that language is unambiguous it is presumed that the Legislature intended the meaning clearly expressed and no further judicial construction is required or permitted. The statute must therefore be enforced as written. The words in the statute are given their plain and ordinary meaning.

36.) A criminal defendant has the right to be sentenced based upon correct guidelines.

37.) Moreover, a criminal defendant has the right to be sentenced based upon correct and accurate information.

38.) The purpose of counsel at sentencing is to present explanatory or extenuating facts, to make arguments for the mitigation of sentence, to expose assumptions concerning petitioner's criminal record which are materially untrue, and to insure the sentence is based on reliable and trustworthy information.

39.) It is equally well established that the use of incorrect information at sentencing may constitute a violation of the petitioner's constitutional right to due process.

40.) It is vitally important to the petitioner and to the ends of justice that the sentence be based upon accurate information.

41.) Petitioner submits that when the facts of his case are viewed in light of the above facts, it is clear that his trial counsel's performance fail below the objective standard of reasonableness.

42.) Trial counsel's failure to object to such an obvious error as the use of the wrong sentencing grid location can never be held to be reasonable.

43.) Petitioner was prejudiced by that error to the extent that he was denied due process at sentencing as he was sentenced based upon incorrect and inaccurate information.

44.) Petitioner was clearly denied the effective assistance of counsel at sentencing.

45.) Because this claim is a question of law which goes to the petitioner's right to due process of law, which are, reviewed "de nove", the state courts decision on this claim is not afforded any presumption of correctness.

## HABEAS CLAIM II

46.) THE PETITIONER WAS DEPRIVED OF HIS DUE PROCESS RIGHTS PROVIDED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE THE PROSECUTOR FAILED TO EXERCISE DUE DILIGENCE IN SECURING THE PRESENTS OF A RES GESTAE WITNESS AT TRIAL

## FACTUAL ALLEGATION

47.)   Detroit Police Officer Pierre Mitchell, one of the two police officers that
       responded to the incident in question was called to testify at Petitioner's
       Preliminary Examination, (P.E.T. pg. 20).

48.)   Officer Mitchell's testimony was significant to petitioner's case where Officer
       Mitchell's testimony at the Preliminary Examination was not only incomplete
       contrast to testimony given at petitioner's trial by Officer Ronald Kidd, who is
       Officer Mitchell's partner and was the other officer who responded to the incident
       in question.

49.)   Officer Mitchell's Preliminary Exam testimony was also favorable to petitioner
       and supported the self-defense theory of the incident.

50.)   However, Officer Mitchell was not produced at trial even though he was listed as
       a prosecution witness. (See **Exhibit J**)

51.)   The prosecutor had a duty to, at the very least to insure that this witness was
       subpoenaed. However, by the prosecutor's own statements to the trial Judge, he
       could not say that this witness was subpoenaed. (T.T. Vol. 3, pg. 37-38).

52.)   The Michigan court of Appeals stated in their decision to reject this claim that,
       "MCL 767.40 (A) imposes no duty on the prosecution with respect to a res gestae
       witness once the prosecution has subpoenaed that witness . . . "(Court of Appeals
       decision, pg. 2).

53.)   However, as stated above, the prosecutor in this case could not say that Officer
       Mitchell was subpoenaed.

54.)   The Michigan Court of Appeals also stated that, "Moreover, the trial court's

instruction to the jury that it could infer that Officer Mitchell would have testified favorably to the defendant, even though defendant was not entitled to this instruction, actually inured to defendant's benefit as he was acquitted by the jury of the charge that he assaulted Officer Mitchell with the intent to murder (Court of Appeals decision pg. 2 marked as **Exhibit A**).

55.)   However, had Officer Mitchell been present and testified at petitioner's trial, it can be reasonably presumed that his testimony would have been the same as it was at the Preliminary Exam.

56.)   Officer Mitchell's testimony at the Preliminary Exam supported petitioner's defense theory was the complete opposite of Officer Ronald Kidd's trial testimony, and there is a reasonable probability of changing the jury's verdict respecting guilt on all the charges and not just the charge that petitioner assaulted Officer Mitchell.

57.)   It is well-established that defendant's have a Fifth and Sixth Amendment right to present witnesses that are both material and favorable to their defense.

58.)   It has been concluded that evidence is material only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.

59.)   Given the fact that Officer Mitchell's testimony was favorable to the defendant; his non-production had to be unfavorable to the defendant.

60.)   Therefore, the prosecutor's lack of due diligence in even assuring that Officer Mitchell received his subpoena was a depravation of the petitioner's constitutional right to a fair trial and due process of law.

61.)   Because this claim is a question of law which goes to the petitioner's rights to due

process which are reviewed "de novo", the presumption of correctness afforded the state court's decision does not apply to this claim.

62.) The following four (4) claims were presented to the state courts through post conviction collateral proceedings, (M.C.R. 6.500, Motion For Relief From Judgment).

## HABEAS CLAIM III

63.) PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO HAVE THE EFFECTIVE ASSISTANCE OF COUNSEL FOR HIS ONE AND ONLY APPEAL AS OF RIGHT.

## FACTUAL ALLEGATION

64.) (A)   THE PETITIONER'S APPELLATE COUNSEL IGNORED SIGNIFICANT AND OBVIOUS ISSUES WHILE PURSING WEAKER CLAIMS.

65.) Appellate counsel was certainly ineffective in preparing petitioner's one and only appeal of right.

66.) This is shown by the fact that appellate counsel ignored the obvious and significant claims on direct appeal, that petitioner later raised in his post conviction collateral proceedings, (M.C.R. 6.500 Motion for Relief from Judgment).

67.) The ignored claims were of much more importance than were the claims that appellate counsel halfheartedly raised.

68.) Appellate counsel raised the claim that petitioner was sentenced based upon the

incorrect sentencing grid location, which had this claim succeeded would have still been useless in gaining the requested relief for the petitioner.

69.)   However, the claim that petitioner received ineffective assistance of trial counsel where his trial counsel failed to have a res gestae witness produced at trial and failed to investigate the facts and circumstances of his case and therefore, failed to present a defense at trial, had they succeeded, they would have gained the requested relief for the petitioner.

70.)   It is respectfully submitted that not only were petitioner's ineffective assistance of counsel claims obvious and significant, (See Habeas Claim IV (A) and (B)). Petitioner had also specifically requested that appellate counsel raised these claims (See Habeas Claim III (B)).

71.)   The fact that Police Officer Pierre Mitchell's testimony was vital to petitioner's defense and the fact that petitioner's trial counsel failed to have this witness produced at trial is gross ineffective assistance of trial counsel.

72.)   The fact that petitioner's appellate counsel failed to raise this claim on petitioner's direct appeal also establishes gross ineffective assistance of appellate counsel.

73.)   The same can be said for trial and appellate counsel's performance in failing to investigate the facts and circumstances of petitioner's case and failure to present a defense at trial or perfect the petitioner's one and only appeal of right.

74.)   Petitioner's claims of ineffective assistance of trial counsel are not mere irregularities, they are major constitutional violations which cast significant doubt on the fairness of petitioner's trial, more importantly, and they call into question the reliability of petitioner's conviction.

14

75.) Petitioner is guaranteed certain minimum safeguards to make his one and only appeal of right "adequate and effective", among these safeguards is the right to effective assistance of appellate counsel.

76.) By examination of the record, it is clear that appellate counsel failed to raise any of the claims on direct appeal that Petitioner later raised in his pro se post conviction proceedings (M.C.R. 6.500 Motion for Relief from Judgment).

77.) By comparing the meritorious issues that appellate counsel ignored, with the much weaker claims raised, such as sentencing grid location, and it is clear that the ignored claims are obviously and significantly stronger than those raised by appellate counsel on direct appeal.

78.) Petitioner contends that his appellate counsel's performance fail below the objective standard of reasonableness when he failed to raise the aforementioned claims on direct appeal after petitioner specifically requested he do so.

79.) Counsel's deficient performance was prejudicial to petitioner's case on appeal where, had counsel raised the aforementioned claims on direct appeal, petitioner would have had them reviewed and properly exhausted on his appeal of right and a reasonability exist that the results of his direct appeal would have been different.

80.) Because this claim is a question of law which goes to petitioner's right to due process, which are reviewed "de novo", the presumption of correctness afforded the state court's decision does not apply to this claim.

81.) (B)    THE PETITIONER'S APPELLATE COUNSEL FAILED TO INVESTIGATE THE FACTS AND CIRCUMSTANCES OF HIS CASE AND THEREFORE, FAILED TO PROPERLY RAISE AND ARGUE PETITIONER'S

CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL ON
DIRECT APPEAL.

82.)    Petitioner's appellate counsel's feeble and heartless effort in preparing
petitioner's one and only appeal of right was indeed constitutionally ineffective.

83.)    Petitioner in the case at bar was convicted of a number of very serious charges
and sentenced to 37½ years to 60 years in prison.

84.)    There are many facts in petitioner's case that would have shown that petitioner
was not in possession of his mental capacity at the time of the incident that
resulted in the charges against petitioner and ultimately his conviction, sentence
and drastic loss of liberty.

85.)    First, the petitioner was on medication for depression at the time of the incident in
question, (See Witness Statement pg. 2 marked as **Exhibit F**).

86.)    Second, the petitioner had been suicidal for at least two weeks before the incident
in question, (See Witness Statement pg. 1, marked as **Exhibit F**, and T.T. Vol. 1,
pg. 105).

87.)    Third, the petitioner shot himself three (3) times during the incident in question,
(See **Exhibits** marked G, H, I, and T.T. Vol. 1, pg. 60-62, T.T. Vol. 1, pg. 81-85).

88.)    Fourth, the petitioner was placed on the psychiatric ward of the Wayne County
Jail upon his release from the hospital for treatment of his gunshot wounds.

89.)    Fifth, the petitioner was prescribed two (2) different anti-depression medications
for the duration of his stay at the Wayne County Jail, (See Habeas Claim IV (B)).

90.)    The petitioner in this case was determined to be indigent and unable to retain
counsel or an investigator for his defense.

91.) Therefore, Petitioner's court appointed trial counsel had a duty to investigate the above stated facts of petitioner's mental instability and assert those facts at trial.

92.) However, given the fact that petitioner's trial counsel failed to investigate the facts and circumstances of his case, this duty fail to petitioner's court appointed appellate counsel.

93.) However, petitioner's appellate counsel also failed in his duty to investigate the facts and circumstances of his case, and assert those facts on petitioner's direct appeal.

94.) As a result of trial and appellate counsel's deficient performance in representing petitioner at trial and on direct appeal, no state court has fully reviewed the facts and circumstances of petitioner's mental state at the time of the incident, or his competency to stand trial.

95.) Petitioner specifically instructed his appellate counsel to move for a new trial or an evidentiary hearing in order to make a factual record of his claims on appeal. (See **Exhibit K**)

96.) However, appellate counsel failed to do so and the petitioner filed an Attorney Grievance against his appellate counsel. (See **Exhibit L**)

97.) Petitioner received no justice from the Attorney Grievance Commission and therefore, petitioner went on the write complaints to the Michigan Appellate Assigned Counsel System; the Wayne County Circuit Court Judge; and the Chief Judge of the Michigan Court of Appeals. (See **Exhibit M**)

98.) However, the petitioner received no justice from any of these complaints either.

99.) Furthermore, the petitioner's appellate counsel went on to file a brief on appeal in

behalf of petitioner that was grossly defective.

100.) Upon receiving a copy of the brief filed by his appellate counsel in Michigan Court of Appeals, the petitioner discovered that his appellate counsel had cited crimes and sentences in his brief on appeal that petitioner was never even charged with much less convicted of. (See **Exhibit N**)

101.) Therefore, the petitioner filed a second grievance with the Attorney Grievance Commission. (See **Exhibit O**)

102.) The Michigan Appellate Assigned Counsel System began an investigation into the conduct and representation of the petitioner's appellate attorney. (See **Exhibit P**)

103.) The investigation by the Michigan Appellate Assigned Counsel System revealed that the petitioner's appellate counsel basically focused all his attention on the seemingly unimportant issue of the presentence investigation report. (See **Exhibit P**)

104.) The petitioner's appellate counsels performance fail far below the objective standard of reasonableness where he failed to investigate the facts and circumstances of petitioner's history of mental instability where he failed to utilize vital evidence of petitioner's unrational behavior before, during and after the incident in question to show that the petitioner should have received a psychiatric examination for purposes of an insanity defense and competence to stand trial; and where he filed the petitioner's brief on appeal alleging crimes that petitioner was never charged or convicted of.

105.) The petitioner was prejudiced by appellate counsel's deficient performance in that

the claims appellate counsel failed to raise are meritorious and had appellate counsel raised them on direct appeal, petitioner would have had them properly reviewed and exhausted on his appeal of right and according to the Michigan Court of Appeals decision, the result of petitioner's direct appeal would have been different.

106.) Therefore, appellate counsel's performance fail below the objective standard of reasonableness when considering the facts and circumstances of this case and there is a reasonable probability to "undermine confidence in the outcome "of petitioner's direct appeal, whether counsel's error's are considered single or cumulatively under both Federal and Michigan Law.

107.) This claim is a question of law which goes to petitioner's constitutional right to due process of law, which are reviewed "de novo". Therefore, the state court's decision is entitled to no presumption of correctness.

## HABEAS CLAIM IV

108.) PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO HAVE THE EFFECTIVE ASSISTANCE OF CONSEL FOR HIS DEFENSE.

## FACTUAL ALLEGATIONS

109.) (A)    PETITIONER'S TRIAL COUNSEL FAILED TO HAVE A RES GESTAE WITNESS PRODUCED AT TRIAL WHICH DEPRIVED PETITIONER OF A SUBSTANTIAL DEFENSE

110.) Police Officer Pierre Mitchell was one of two Police Officers who responded to

19

the incident that led to the charges and ultimately the conviction and sentence for which petitioner is now serving prison time and from the basis for this petition for Writ of Habeas Corpus.

111.)  The petitioner was charged with one count of assault with intent to murder Officer Mitchell.

112.)  However, at petitioner's Preliminary Examination Hearing, Officer Mitchell's testimony was favorable to petitioner's defense that petitioner was acting in self-defense at the time of the incident which resulted in the charges against petitioner. (See Argument IV (A), of petitioner's Memorandum of Law attached hereto)

113.)  Officer Mitchell was the only police officer to give testimony at petitioner's Preliminary Examination Hearing and the only police officer not produced at trial.

114.)  It can be reasonably inferred that Officer Mitchell was not produced at trial due to the fact that his testimony at the Preliminary Exam would have been very damaging to the prosecution's case and would have strengthened petitioner's defense theory of self-defense, at trial.

115.)  Officer Mitchell was listed as a prosecution witness and the defense was not made aware that he would not be available to testify at trial until the very day that Officer Mitchell was suppose to testify.

116.)  This fact is reflected in defense counsel's opening statement, what he said is as follows:

"The critical evidence at this pint, ladies and gentlemen, is that the police officers at no time ever identified themselves as police officers.  And as the police

20

officer, I believe Officer Mitchell will testify, he indicates that it sounded like the defendant was getting out of bed when he came down those stairs, not in this loud crashing sound that was going on, according to Ms. Sharon Taylor, but he is coming down the stairs when he is shot two times by the police (T.T. Opening Statement, pg. 170). That's what you're going to have to decide; did my client have a right to defend himself from what he thought at that point was an unlawful entering of the house, (T.T. Opening Statement, pg. 172)."

117.) The above shows beyond all reasonable doubt that defense counsel was under the impression that Officer Mitchell would indeed be testifying at petitioner's trial.

118.) However, when it came time to produce Officer Mitchell as a witness, the prosecutor addressed the court and stated as follows:

"Before you go Judge, as I indicated at side bar, I made a phone call. In fact, I've been making phone calls all week to Officer Mitchell's house. And I first was told that he wouldn't be back until Friday. I just called this morning in the court room and I spoke to his brother who I hadn't spoken to previously. He said he'd be back sometime tonight. And I know I've indicated to the court that I'm leaving for London tomorrow night. And at best we would work a half-day on Good Friday. But I did inquire about being able to go out of order and perhaps be able to call Officer Mitchell if he came back tomorrow morning (T.T. Vol. 3, pg. 36-37). I spoke with his father yesterday, who didn't know much at all. And then I called this morning and it appeared that I woke up his brother who didn't give me his name, and said that it was his understanding that he was coming back this evening, although he didn't know what time. **You know, I don't know**

**happened.  I don't want to say Officer Mitchell got the notice because I don't know that he did."** (T.T. Vol. 1, pg 38)

119.)  Upon discovering that Officer Mitchell would not be produced as expected, and the prosecutor said that Officer Mitchell would be back on Friday or that evening, it was a must for petitioner's defense attorney to request a continuance, until Officer Mitchell would be produced.

120.)  However, defense counsel failed to request a continuance and allowed Officer Mitchell's testimony to go unheard by the jury.

121.)  Officer Mitchell's Preliminary Examination testimony would tend to establish that the petitioner could not have known that the people in the house were police officers.  And that would support petitioner's self-defense theory.

122.)  At the petitioner's Preliminary Exam, Officer Mitchell testified that, "We never identified ourselves as police officers", (P.E.T. pg. 30-33).

123.)  The above testimony was vital to petitioner's defense that he did not know that the people in the residence were police officers.

124.)  Petitioner's trial counsel's failure to move for a continuance until Officer Mitchell could be present was constitutionally ineffective where; counsel's failure denied the petitioner a substantial defense.

125.)  Petitioner respectfully submits that his trial counsel's performance fail below the objective standard of reasonableness when considering the facts and circumstances of his case, where trial counsel failed to have a res gestae witness produced at trial.

126.)  Counsel's deficient performance was prejudicial to petitioner's defense where had

counsel had Officer Mitchell produced at trial, there is a reasonable probability that the result of petitioner's trial would have been different.

127.) Because this claim is a question of law which goes to petitioner's right to due process which are reviewed "de nove", the presumption of correctness afforded the state courts decision does not apply to this claim.

## FACTUAL ALLEGATION

128.) (B.)  PETITIONER'S TRIAL COUNSEL FAILED TO INVESTIGATE THE FACTS AND CIRCUMSTANCES OF HIS CASE AND THEREFORE FAILED TO PRESENT A DEFENSE AT TRIAL.

129.) Petitioner was on trial charged with three counts of assault with intent to murder; one count of home invasion, first-degree; one count of felony firearm; and one count of habitual offender, second offense.

130.) There were two viable defenses to the charges against petitioner.  One of these viable defenses was self-defense which was presented above as Habeas Claim III (A).

131.) It is respectfully submitted that the facts and circumstances of petitioner's case certainly supported an insanity defense also.

132.) Had trial counsel investigated the facts and circumstances of petitioner's case, he would have discovered that the petitioner had an extensive history of mental instability.

133.) Moreover, the petitioner's behavior before, during and after the incident at issue, (Specifically, the act of shooting himself three (3) times), was more than sufficient to trigger trial counsel's duty to investigate an insanity defense.

134.) There are five sets of circumstances that would certainly show the need for an investigation into an insanity defense, these are, (1.) At the time of the incident at issue, petitioner was on medication for depression, (See **Exhibit** marked F); (2.) The petitioner had been suicidal for at least two weeks prior to the incident at issue, (See **Exhibit** marked F); (3.) The petitioner shot himself three (3.) times during the incident at issue, (See **Exhibits** marked as G, H, I); (4.) Upon release from the hospital for treatment of his gunshot wounds the petitioner was placed on the psychiatric ward in the Wayne County Jail; (5.) The petitioner was placed on two different anti-depression medications for the duration of his stay at the Wayne County Jail.

135.) The above information was available to petitioner's trial attorney, it was part of the discovery package, however, trial counsel failed to do the necessary investigation into the facts and circumstances of petitioner's case to discover this vital information.

136.) Or in the alternative, trial counsel knew of the above vital information and ignored it. In either case, the petitioner's constitutional right to have the effective assistance of counsel for his defense has been violated.

137.) Defense counsel's refusal to investigate and properly prepare for this case deprived petitioner of the substantial defense of insanity and/or self-defense.

138.) Not only did defense counsel not present the insanity or self-defense at trial, he failed to present a defense at all.

139.) Petitioner submits that his trial counsel's performance fail below the objective

standard of reasonableness when he failed to investigate the facts and circumstances of his case and therefore, failed to present a defense at trial.

140.) Trial counsel's deficient performance was prejudicial to petitioner's defense where had counsel investigated the facts and circumstances of his case, he would have discovered and presented the fact that petitioner had an extensive history of mental instability and exhibited irrational behavior before, during and after the incident in question.

141.) Moreover, defense counsel's failure to have petitioner evaluated for criminal responsibility and competence to stand trial (See Habeas Claim (I)(A)), due to his failure to investigate petitioner's case, worked together to deprive petitioner a substantial defense.

142.) Therefore, petitioner has met the two part test of proving ineffective assistance of trial counsel and this Honorable court is respectfully urged to grant petitioner's petition for Writ of Habeas Corpus.

143.) Because this claim is a question of law which goes to petitioner's right to due process, which are reviewed "de novo" the presumption of correctness afforded the state courts decision does not apply to this claim.

## HABEAS CLAIM V

144.) PETITIONER WAS DEPRIVED OF HIS UNITED STATES CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY THE CUMULATIVE EFFECT OF ERRORS.

### FACTUAL ALLEGATIONS

145.) Petitioner has demonstrated above how there were a number of very serious errors

25

before and during his trial and direct appeal that deprived him of his constitutional right to a fair trial and due process of law.

146.) Petitioner respectfully submits that either one of the errors presented above as Habeas claims I-IV, are sufficient to require this Honorable Court's granting of this petition for Writ of Habeas Corpus.

147.) However, in the alternative, if this Honorable Court were to find that none of the errors standing alone, were egregious enough to warrant the granting of petitioner's petition for Writ of Habeas Corpus, it is respectfully submitted that the cumulative effect of these errors are sufficient to undermine confidence in the outcome of petitioner's trial and direct appeal and are so prejudicial as to deny due process.

148.) Petitioner respectfully directs this court's attention to the allegations and arguments set fourth in this petition and the supporting Memorandum of Law to demonstrate how his trial and appellate counsel's representation was deficient and how the deficient performance prejudiced his defense and direct appeal.

149.) Petitioner respectfully submits that the combination of trial counsel's failure to investigate the facts and circumstances of this case; his failure to have petitioner evaluated for criminal responsibility or competency to stand trial; his failure to have a res gestae witness produced at trial; and his failure to present a defense at all, worked together collectively to deny the petitioner a fair trial and due process of law.

150.) Furthermore, it is respectfully submitted that the petitioner's appellate counsel's

failure to investigate the facts and circumstances of his case; his failure to move for a new trial or an evidentiary hearing; his failure to properly present claims of ineffective assistance of trial counsel to the Michigan Court of Appeals; and his ignoring obvious and significant issues on direct appeal while pursuing weaker claims, all worked together to synergistically achieve the critical mass necessary to cast a shadow upon the integrity of petitioner's one and only appeal of right.

151.) One last important point is the fact that of all the errors presented in this petition for Writ of Habeas Corpus, there was a limited instruction given concerning Habeas Claim II, "Prosecutor Misconduct".

152.) However, the courts limited instruction was less than proper and certainly did not remove every trace of prejudice caused by the error.

153.) Therefore, it is respectfully submitted that this Honorable Court should take into account any trace of prejudice that remains when considering this claim.

154.) Petitioner has diligently sought evidentiary hearings in every available state court to make a proper record of his allegations of constitutional errors, however, all said motions for evidentiary hearings were denied by the state courts.

155.) Because this claim is a question of law which goes to petitioner's right to due process which is reviewed "de novo", the state court's decision on this claim is entitled to no presumption of correctness.

## HABEAS CLAIM VI

156.) PETITIONER HAS DEMONSTRATED GOOD CAUSE FOR NOT RAISING HABEAS CLAIMS III THROUGH V ON DIRECT APPEAL AND ACTUAL PREJUDICE AS A RESULT OF MULTIPLE VIOLATIONS OF HIS

CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW.

## FACTUAL ALLEGATIONS

157.)   Habeas claims III through V of this petition were not raised on direct appeal due to ineffective assistance of appellate counsel. (See Habeas Claim III)

158.)   Petitioner had instructed his appellate counsel, on numerous occasions to raise these issues on his one and only appeal of right. (See letters to appellate counsel marked as **Exhibit K**)

159.)   However, appellate counsel failed to do so.

160.)   Petitioner had also instructed appellate counsel to move for a motion for a new trial or and evidentiary hearing in order to make a record of said issues.(See last page of **Exhibit K**)

161.)   Appellate counsel also failed in this regard.

162.)   Therefore, petitioner raised the aforementioned issues in his pro se M.C.R. 6.500 Motion for Relief from Judgment.

163.)   The trial court denied petitioner's Motion for Relief from Judgment on September 22, 2004, citing that the defendant has not demonstrated the requisite, requirements of good cause and actual prejudice as required by M.C.R. 6.508 (D) and therefore, has failed to establish entitlement to relief. (See **Exhibit C**)

164.)   Petitioner went on to appeal the trial courts decision by application for leave to appeal in the Michigan Court of Appeals, and on <u>April 7, 2005</u> the court of appeals denied leave to appeal for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508 (D). (See **Exhibit D**)

165.) Petitioner then filed his pro se application for leave to appeal in the Michigan Supreme Court raising the same issues as in the court of appeals, which was similarly denied on October 31, 2005. (See **Exhibit E**)

166.) Petitioner now submits his pro se Petition For Writ of Habeas Corpus raising the two issues that were raised on his direct appeal, plus, the three issues raised on post-conviction collateral review.

167.) Petitioner has exhausted all his state remedies in regard to every claim in this pro se Petition For Writ of Habeas Corpus, (See paragraph 8 of this petition).

168.) Petitioner respectfully submits that any procedural default, if any exist should be excused by the ineffective assistance of appellate counsel, because petitioner has show that appellate counsel was ineffective for failing to present his habeas claims on direct appeal.

169.) Petitioner has also demonstrated actual prejudice because petitioner's ineffective assistance of trial counsel claims are meritorious, as are his ineffective appellate counsel, prosecutor misconduct, and cumulative effect of error claims.

170.) Moreover, the state courts refused to address every claim contained in petitioner's Motion For Relief From Judgment based upon appellate counsel's failure to raise them on direct appeal.

171.) Thus, Petitioner's claims should not be barred by any procedural default and this Honorable Court should address the merits of his claims.

## **RELIEF REQUESTED**

172.) Wherefore, Petitioner respectfully moves this Honorable Court to grant the following relief:

A.)   Accept Jurisdiction over this case;

B.)   Require Respondent to answer the allegations in this petition;

C.)   Hold evidentiary hearing as this court may deem necessary and appropriate;

D.)   Issue an order that this court will grant a Writ of Habeas Corpus unless the state holds a new trial within a specified time;

E.)   Issue a Writ of Habeas Corpus freeing petitioner from his unconstitutional confinement; and

F.)   Grant all other relief this Honorable Court deems appropriate.

Respectfully Submitted,

*Anthony J. Stokes*

Anthony J. Stokes #365677
Macomb Correctional Facility
34625 26 Mile Road
New Haven, Michigan 48048


I declare under penalty of perjury that the above information is true to the best of my information, knowledge and belief.

Dated: February 13, 2006

*Anthony J. Stokes*

Anthony J. Stokes #365677

MICHAEL L. ESTLE
NOTARY PUBLIC, STATE OF MI
COUNTY OF ST. CLAIR
MY COMMISSION EXPIRES Apr 29, 2011
ACTING IN COUNTY OF MACOMB

13  FEB  2006

*Michael L. Estle*

# **PROOF OF SERVICE**

I, Anthony J. Stokes, being first duly sworn, and with full knowledge of the penalty

of perjury do state that on this __13ᵗʰ__ day of **February**___, 2006, I mailed (1)

one original and (3) three copies of Petition Under 28 USC § 2254 For Writ of

Habeas Corpus  to the  U. S.  District Court, Eastern District of Michigan, Southern

Division by, via First Class Mail of the U.S. Post Office.


cc:
U. S. District Court
Eastern District of Michigan
Theodore Levin United States Courthouse
231 W. Lafayette Blvd
Detroit, Michigan 48226

Anthony J. Stokes #365677
In Pro. Se. Petitioner
Macomb Correctional Facility
34625 26 Mile Road
New Haven, Michigan 48048


Dated: **February   13** , 2006

Sincerely,

*Anthony J. Stokes*
Anthony J. Stokes #365677

MICHAEL L. ESTLE
NOTARY PUBLIC, STATE OF MI
COUNTY OF ST. CLAIR
MY COMMISSION EXPIRES Apr 29, 2011
ACTING IN COUNTY OF MACOMB

13 FEB. 2006
Michael L. Estle

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Anthony J. Stokes,                                Case No:

     Petitioner,                          Honorable:

-vs-

                                          Magistrate:

Hugh Wolfenbarger

     Respondent.

## MEMORANDUM OF LAW IN SUPPORT
## OF PETITION FOR WRIT OF HABEAS CORPUS

By:   Anthony J. Stokes

       Pro Se Petitioner

       Inmate No. 365677

       Macomb Correctional Facility

       34625 26 Mile Road

       New Haven, Michigan 48048

# TABLE OF CONTENTS

Page #

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .I

Statement of Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . VII

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

**ARGUMENT 1**

**THE PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO HAVE THE EFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE. . .28**

A.)    The Petitioner was denied the effective assistance of counsel

where his trial counsel failed to request that the Petitioner be

evaluated for criminal responsibility. . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

B.)    The Petitioner was denied the effective assistance of counsel

where trial counsel allowed Petitioner to be sentences based

upon the incorrect sentencing grid location for the assault with

intent to do great bodily harm and home invasion conviction . . . . . . . .33

**ARGUMENT II**

**THE PETITIONER WAS DEPRIVED OF HIS DUE PROCESS RIGHTS PROVIDED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE THE PROSECUTOR FAILED TO EXERCISE DUE DILIGENCE IN SECURING THE PRESENCE OF A RES GESTAE WITNESS AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36**

**ARGUMENT III**

**PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH**

AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO

HAVE THE EFFECTIVE ASSISTANCE OF COUNSEL FOR HIS ONE AND

ONLY APPEAL AS OF RIGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

     A.)   The Petitioner's appellate counsel ignored significant and

            obvious issues while pursuing weaker claims . . . . . . . . . . . . . . . . . . . . 40

     B.)   The Petitioner's appellate counsel failed to investigate the facts

            and circumstances of his case and therefore failed to properly

            raise and argue Petitioner's claims of ineffective assistance of

            trial counsel on direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

**ARGUMENT IV**

PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH

AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO

HAVE THE EFFECITVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE . .52

     A.)   Petitioner trial counsel failed to have a res gestae witness

            produced at trial which deprived Petitioner a substantial

            defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

     B.)   Petitioner trial counsel failed to investigate the facts and

            circumstances of his case and therefore failed to present a

            defense at trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .59

**ARGUMENT V**

PETITIONER WAS DEPRIVED OF HIS UNITED STATES CONSTITUTIONAL

RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY THE

CUMULATIVE EFFECT OF ERRORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

**ARGUMENT VI**

PETITIONER HAS DEMONSTRATED GOOD CAUSE FOR NOT RAISING
HABEAS CLAIMS III THROUGH V ON DIRECT APPEAL AND ACTUAL
PREJUDICE AS A RESULT OF MULTIPLE VIOLATION OF HIS
CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF
LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

Relief Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

## <u>TABLE OF AUTHORITIES</u>

Page #

Anderson-v-Butler
858 F.2d 16 (1st. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .58

Austin-v-Bell
126 F.3d 843 (6th. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Barber-v-Page
390 U.S. 719
88 S.Ct. 1318
20 LEd.. 2d 255 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

Beavers-v-Balcom
636 F.2d 114 (5th. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .64, 65

Becton-v-Barnett
920 F.2d 1190 (4th. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Bouchillon-v-Collins
907 F.2d 589 (5th. Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 65

Bousley-v-U.S.
523 U.S. 614
118 S.Ct. 1604
140 LEd.. 2d 828 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .69

Boykins-v-Wainwright
737 F.2d 1539 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Brennan-v-Blankenship
472 F. Supp. 149 (W. D. VA. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

California-v-Green
399 U.S. 149
90 S.Ct. 1930
26 LEd.. 2d 489 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

Carpenter-v-Chapleau
72 F.3d 1269 (6th. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

Chambers-v-Armontrout
885 F. 2d 1318 (8th. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Chambers-v-Mississippi
410 U.S. 28
93 S.Ct. 1038

35 LEd. 2d 297 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 33

Coleman-v-Thompson
501 U.S. 722
111 S.Ct. 2546
1115 LEd.. 2d 640 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Cooper-v-Fitzharris
586 F.2d 1325 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Douglas-v-California
372 U.S. 353
83 S.Ct. 814
9 LEd.. 2d 811 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 43

Drope-v-Missouri
95 S.Ct. 896 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

Evitts-v-Lucey
105 S.Ct. 830 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 47, 48

Fagen-v-Washington
942 F.2d 1155 (7th. Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Freeman-v-Lane
962 F.2d 1252 (7th. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 74

Gravely-v-Mills
87 F. 3d 779 (6th. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Gray-v-Greer
800 F.2d 644 (7th. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Griffin-v-Illinois
351 U.S. 12
76 S.Ct. 585
100 LEd. 891 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 43

Hammer-shay-v-Commonwealth
398 S.W. 2d 883 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Harris-v-Reed
894 F. 2d 871 (7th. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Henderson-v-Sargent
926 F. 2d 706 (8th. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65, 76

Lee-v-U.S.
545 F. Supp. 662 (E. D. VA. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Lindh-v-Murphy
521 U.S. 320
117 S.Ct. 2059
138 LEd.. 2d 481 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..27

Martin-v-Rose
717 F.2d 295 (6th. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Massaro-v-U.S.
123 S.Ct. 1690 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .69

Matthews-v-Abramajtys
92 F. Supp. 2d 615 (E. D. Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 73, 74, 75, 76

Mayo-v-Henderson
13 F. 3d 528 (2nd. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

Memna-v-Rhay
389 U.S. 128
88 S.Ct. 254
19 LEd. 2d 336 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 35, 36

Munson-v-Kapture
384 F. 3d 310 (6th. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Murray-v-Carrier
477 U.S. 478
106 S.Ct. 2639
91 LEd.. 2d 397 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73, 75, 76.

Nevers-v-Killinger
169 F. 3d 352 (6th. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ohio-v-Roberts
448 U.S. 74
100 S.Ct. 2531 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Orazio-v-Dugger
876 F. 2d 1508 (11th. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .74

People-v-Daniel
207 Mich. App, 47, 58
523 N.W. 2d 830 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

People-v-Hackett
421 Mich. 338
365 N.W. 2d 120 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

People-v-Knapp
244 Mich. App. 361, 385
624 N.W. 2d 227 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

People-v-Nyberg
140 Mich. App. 160, 165-166
362 N.W. 2d 749 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

People-v-Parker
133 Mich. App. 358, 363
349 N.W. 2d 574 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

People-v- Pickens
446 Mich. 298
521 N.W. 2d 797 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .63

People-v-Stewart
219 Mich. App. 38, 42
555 N.W. 2d 715 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

Pickman-v-Bell
131 F. 3d 1150 (6th. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

Powell-v-Alabama
287 U.S. 45
53 S. Ct. 55
77 LEd. 158 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .66

Pravitt-v-Waldron
831 F. 2d 1245 (5th. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 62

Ratliff-v-U.S.
999 F. 2d 1023 (6th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .75

Strickland-v- Washington
466 U.S. 668
104 S.Ct. 2052
80 LEd.. 2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . .28, 31, 32, 33, 36, 51, 52, 58, 61, 63, 65, 66

Towns-v-Smith
395 F. 3d 251 (6th. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 56

Townsend-v-Burks

344 U.S. 736
68 S.Ct. 1252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35, 36
92 LEd. 1690 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Tucker-v-Prelesnik . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
181 F. 3d 747 (6th. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36
969 F. 2d 39 (3rd. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Dwyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .71
843 F. 2d 60 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Fessel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .65, 67
531 F. 2d 1275 (5th. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Frady
456 U.S. 152
102 S.Ct. 1584 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
71 LEd.. 2d 816 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Francis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .71
170 F. 3d 546 (6th. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Gaviria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
116 F. 3d 1498 (D. C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Nixon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 53
94 S.Ct. 3090 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Pogliese . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
805 F. 2d 1117 (2nd. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Rivera . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .70
900 F. 2d 1462 (10th. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S. Ex Rel. Rivera-v-Franzen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 65
594 F. Supp. 198 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Scheffer
523 U.S. 303
118 S.Ct. 1261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
140 LEd. 2d 413 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

U.S.-v-Sepalveda . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .70, 71
15 F. 3d 1161 (1st. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V

U.S.-v-Soto
132 F. 3d 56 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

Walker-v-Engle
703 F. 2d 959 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

Walker-v- Mithcell
587 F. Supp. 1432 (E.D. VA. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .62

Warren-v-Smith
161 F. 3d 358 (6th. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Weekly-v-Jones
56 F. 3d 889 (8th. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .64

## STATEMENT OF QUESTIONS PRESENTED

I.      Whether Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to have the effective assistance of counsel for his defense?

**Petitioner Answers "YES"**

II.     Whether Petitioner was deprived of his due process rights provided by the Fourteenth Amendment to the United States Constitution where the prosecutor failed to exercise due diligence in securing the presents of a Res Gestae Witness at trial?

**Petitioner Answers "YES"**

III.    Whether Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to have the effective assistance counsel for his one and only appeal as of right?

**Petitioner Answers "YES"**

IV.     Whether Petitioner was deprived of his Sixth and Fourteenth Amendments rights under the United States Constitution to have the effective assistance of counsel for his defense?

**Petitioner Answers "YES"**

V.      Whether Petitioner was deprived of his United States Constitution right to a fair trial and due process of law by the cumulative effect of errors?

**Petitioner Answers "YES"**

VI.     Whether Petitioner has demonstrated good cause for not raising Habeas Claims III through V on direct appeal and actual prejudice as a result of multiple violations of his Constitutional rights to a fair trial and due process of law?

**Petitioner Answers "YES"**

VII

## STATEMENT OF FACTS

The charges against Mr. Stokes stem from an incident that occurred on August 17, 2000, within the area of the home of Sharon Taylor located at 16541 Evergreen Street, Detroit, Michigan at approximately 9:00 a.m. (Trial Transcript Vol. 2, pg. 6-7, 14-15, 24, 34, 44-45, 57).

Mr. Stokes, (hereinafter, Petitioner), was convicted of 1.) Assault with intent to do great bodily harm less than murder; 2.) Assault with intent to murder; 3.) First-degree home invasion; and 4.) Felony-Firearm. Petitioner received a combined sentence of 37½ years to 60 years in prison. (See Sentencing transcripts)

## THE PRELIMINARY EXAMINATION

Detroit Police officer Pierre Mitchell testified that on August 17, 2000, that he and his partner Ronald Kidd escorted the complainant, Sharon Taylor from the Eighth Precinct of the Detroit Police Department to her home at 16541 Evergreen, in the City of Detroit, because she was scared to go home, that her boyfriend or ex-husband, he made threats to her. And she wanted to be escorted home (Pre. Exam. Transcript pg 20-21).

Officer Mitchell testified that once they arrived at the residence, he and Officer Kidd proceeded to check the outside to make sure it was no signs of forced entry. The screen was locked and the mail was there so they figured it was no one home. (Pre. Exam.Transcript pg 21) Officer Mitchell testified that he and Officer Kidd proceeded to check the inside of the residence, and the first floor was secure. Officer Mitchell proceeded to check upstairs, he went maybe halfway, and that's when he heard some noise, so he came back down. Officer Mitchell was in the living room with his partner about ten feet from the staircase. He had a view of the staircase, but not of the top of the staircase. Officer Mitchell informed his partner that someone was there. Officer Mitchell testified that once he informed his partner that's when the subject upstairs, he

1

came running downstairs in a fast pace. Ms. Taylor, she left out the door, and they took cover behind a wall. You could tell the subject was like loading up a gun. It sound like a loading of something, it was a lot of noise being made. The two officers took cover behind the wall, and that's when the subject started firing shots (Pre. Exam Transcript pg 22-24).

Officer Mitchell testified right before he took cover he didn't get a good look at him but he knew it was guy. Officer Mitchell didn't see a gun in the subject's hand he only heard the gun after they took cover. The subject was shooting at them and his partner Officer Kidd is the one who was returning fire at the subject. Officer Mitchell went on to testify that he was still shooting at them so they backed up into the kitchen. It was no cover so they led themselves down to the basement so they could take cover (Pre. Exam. Transcript pg 25). Officer Mitchell testified that shots were being fired all over the living room where we were at. Officer Mitchell had seen the holes in the wall it was about 20 feet away. It was on the other side of the house. They was on one side, it was on the other side of the wall, like the subject was on his side. Officer Mitchell didn't hear the subject say anything, and they didn't say anything to him (Pre. Exam. Transcript pg 26-27).

On Cross-Examination Officer Mitchell testified that after they went into the house to search the first floor Ms. Taylor was in the house. After inside, he thinks an upstairs light was on or stair light on that was upstairs. But, the rest of the house was dark. You could see the staircase pretty good. Officer Mitchell testified after searching the first floor he decided to go up the stairs. Prior to him going upstairs he didn't hear anything from upstairs. Because they didn't think anyone was home they never identified themselves as police officers. They never said we're police or yelled out police are here or anything like that (Pre. Exam. Transcript pf 30-32). Officer Mitchell testified that when he got halfway upstairs he heard noise like someone was

2

getting out of the bed or something, there was moving around like footsteps. Officer Mitchell later on discovered that was the bedroom upstairs. Officer Mitchell after he heard this movement still didn't say we're police officers or whoever's upstairs, we're the police down here. Officer Mitchell went back downstairs and informed his partner. After he informed his partner, the guy upstairs came running down the stairs from the bedroom and straight down the stairs. Officer Mitchell and his partner were in the living room about ten feet from the bottom of the steps. When the subject started running down the stairs they heard clicking, so they took cover, and Officer Mitchell didn't see a gun (Pre. Exam. Transcript pg 32-33).

Officer Mitchell testified that he didn't know what the clicking was but assumed it to be a gun. They already had their guns (Glocks drawn because of what Ms. Taylor told them prior to them getting there). Officer Mitchell and his partner already had their guns out and pointing straight ahead of them prior to any shooting (Pre. Exam. Transcript pg 35). Officer Mitchell testified that he can't tell anything about what happened outside, that he and his partner stayed in the basement until other police officers came and told them that it was okay to come out of the basement (Pre. Exam. Transcript pg 40).

Trial – Defendant's Opening Statement by Mr. Chedraue:

**There will also be evidence presented that Mr. Stokes was in the house, and you will hear evidence that he was upstairs asleep, as one of the police officers presents evidence that we believe he will present, he was this, what he thought was a person upstairs in this bedroom asleep, and the evidence presented will be that the officers do not, when they come into the house, do not identify themselves as police officers. (T.T. of Opening Statement pg 169)**

The critical evidence at this point, ladies and gentlemen, is that the police officers at no time ever identified themselves as police officers. And as the police officer, I believe it's Officer Mitchell will testify, he indicates that it sounded like the defendant was getting out of bed when he came down those stairs, not in this loud crashing sound that was going on, according to Ms. Sharon Taylor, but he was coming down the stairs when he is shot two times by the police. (T.T. of Opening Statement pg 170)

That's what you're going to have to decide did my client have a right to defend himself from what he thought at that point was an unlawful entering of the house? (T.T. of Opening Statement pg 172)

Ladies and gentlemen, my client is guilty of shooting a gun. My client is guilty of possessing a gun and shooting the gun in the house. We don't deny that. The question that you have to decide for yourselves is was he rightly defending himself when he's shot twice by police, people he does not know who it is, again, one in the leg, and one in the face. That's how you have the blood throughout the house. (T.T. of Opening Statement pg 173)

Volume I, T.T. William Wilson

\*     Testified that on August 17th of the year 2000 he lived on Evergreen, and in the morning hours around 9:00 o'clock he heard gun shots. He was in his room on the second floor of his house and heard several gun shots. Wilson testified that he looked out the window and a lady was running across the street and saw a man shooting at her, and described the lady as dark skinned with a black dress on and black heels on. (T.T Vol. 1 pg 6-8)

Wilson went on to say that the man was kind of tall, and described that the man had a gray shirt on and he was light skinned and had a gray gun, a silver gun. But couldn't see how he was holding the gun. Wilson testified that the man was shooting in the direction towards the

4

lady going towards Six Mile. The man turned around and went towards Grand River, the opposite direction, and didn't see anything after that. (T.T. Vol. I pg 9)

*       Timothy Hucks testified that on August 17th of the year 2000 he lived on Evergreen and Verne, and in the early morning hours around 9:00 o'clock he heard several gun shots, about four or five guns shots. He was upstairs on his computer right next to the window. Hucks testified that he looked outside his window and saw a lady running down the sidewalk towards Six Mile, and described the lady as wearing a multicolored dress. Hucks went on to say that a male figure walked out and he seemed to be holding a firearm or something. When I first saw him, he was on the corner of the block. (T.T. Vol. I pg 14-15)

Hucks went on to testify that maybe 30 seconds had lapsed from the time he saw the woman until he saw the man. That the man was walking at a normal pace and didn't hear any shots after looking out the window when the woman was running and the man was behind her. Hucks testified that the man picked up the gun and was aiming it at something, and then he puts the gun down he never saw this person with the gun shooting at anybody. (T.T. Vol. I pg 20-21)

*       Paula McDonald testified that on August 17th of the year 2000 she lived on Evergreen, and that in the early morning hours around 9:00 o'clock she thought she heard firecrackers. Ms. McDonald went to look out the window towards Evergreen and saw a man walking towards Grand River but he was shooting towards Six Mile. He just had it in his hand just shooting. His head going one way and his ---- going the other. Ms. McDonald went on to testify that after she looked further she saw it was the police the man was shooting at. She was walking, they had on rain coats, they was dressed as policemen. Then I saw he was on the ground somewhere across the street and the policemen was around. (T.T. Vol. I pg 24-27)

\*      Connie Rikard testified that on August 17th of the year 2000 he lived on Evergreen, and that in the early morning hours around 9:00 o'clock. He was in the bathroom and he heard gun shots. He opened his window and looked out but didn't see anything. He ran towards the front and went downstairs. I heard gun shots and a lady hollering no, no. He went out the front door on the porch and heard a police siren. The police car made a u-turn at the corner of Verne and Evergreen. He seen a man down further in the middle of the block towards Grand River with a gun. He was still firing the gun towards McNichols. Rikard went on the say that the police officer jumped out, she told him to get back, so he stepped back and he couldn't see anything but heard a couple of more gun shots. He looked back out after it was over and the police, they came from around their door, closed it, and walked over towards him. He couldn't recognize the man if he saw him again. All he know is that the man didn't have any hair and he was tall. (T.T. Vol. 1 pg 34-38)

\*      Jonathan turner testified that on August 17th of the year 2000 he lived on Evergreen, and around 9:00 a.m. (T.T. vol. 1 pg 44) Mr. Turner testified that he didn't know Mr. stokes but he know of him. He have seen him across the street as a neighbor for a few years. He guess they've been dating or whatever for a few years, and far as he could tell they were a nice couple. He saw them coming and going from this house. He heard some shots and it sounded like somebody was coming in my home and he got up and looked out the window. Turner testified that he moved from the window after he seen the lady going this was and he seen his neighbor with a gun and he shot and he got out the window. The weather condition was a little dreary. It started raining a little afterwards. Turner testified that when he saw the woman running and saw his neighbor running behind her he was approximately 20 to 30 feet behind her. When Mr. Stokes first came out no he wasn't shooting, but by the time he got on the grass, I heard a couple

of shots. Mr. Stokes was on the grass in front of his house. Mr. Turner testified that he heard five or six shots total and indicated to the police that he saw Mr. Stokes fire two of those shots, the other shots he can't account for them but he heard them, I can't say he did it or who. (T.T. Vol. I pg 53-56)

\* Shawn Thompson testified that on August 17th of the year 2000 he lived on Evergreen, and about around 9:00 o'clock in the morning he heard gun shots. He looked out the window, and saw a man walking towards Six Mile, McNichols. Thompson testified that the man was walking and firing a gun that looked like a nine millimeter but couldn't tell what color it was. He saw the man shot about two or three times. Thompson testified that the man put the gun to his side and started walking towards Grand River, and as he walked past the front of his house the man then shot himself. He saw the police coming the other direction. The car stopped and then he shot himself in the chest. The man had fell, and he picked up the gun and shot himself a second time in the chest. He picked up the gun and shot himself the third time in the chest. The man was just laying on the ground and police came and the paramedics came. (T.T. Vol. I pg 57-62)

\* Derris Marshall testified that Sharon Taylor is the godmother of his children, and by knowing Sharon Taylor, he have gotten to know Anthony Stokes. Marshall testified that on July 28th of the year 2000 he changed the locks on her doors. It was a total of four doors. (T.T. Vol. I pg 69-70)

\* Lynette White-Police Officer testified that she was working on August 17th of 2000 on a Thursday, and was working with her partner Police Officer Emily Waite. Her and her partner responded to a foot chase, priority foot chase, person with a weapon. That's the information that came out over the radio. As she arrived on the scene, the area and she heard a gun shot and that brought her attention to the subject. Police Officer White testified the defendant is standing with

7